104 F.3d 350
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Harold WEXLER, Plaintiff-Appellant,
v.
UNITED STATES OF AMERICA, Defendant-Appellee.
 No. 96-2121.
 United States Court of Appeals, Second Circuit.
 Sept. 24, 1996.
 
 APPEARING FOR APPELLANT:Harold Wexler, pro se, Eglin, FL.
 APPEARING FOR APPELLEE:Peter A. Norling, Assistant United States Attorney for the Western District of New York, Brooklyn, NY.
 Before MINER, ALTIMARI and PARKER, Circuit Judges.
 UPON CONSIDERATION of this appeal from an order of the United States District Court for the Eastern District of New York, it is hereby
 ORDERED, ADJUDGED, AND DECREED that the order be and hereby is AFFIRMED.
 This cause came on to be heard on the transcript of record and was submitted.
 Plaintiff-appellant Harold Wexler appeals from an order of the United States District Court for the Eastern District of New York (Platt, J.) denying appellant's 28 U.S.C. § 2255 motion to vacate his sentence.
 
 
 1
 On March 11, 1994, Wexler and Eugene Seneci (together, the "defendants") were convicted, following a jury trial, of conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 1341 and 371, mail fraud in violation of 18 U.S.C. §§ 1341 and 2, conspiracy to aid or assist the preparation of a false income tax return in violation of 18 U.S.C. § 371 and 26 U.S.C. § 7206(2), and aiding and assisting the preparation of a false return in violation of 18 U.S.C. § 2 and 26 U.S.C. § 7206(2).
 
 
 2
 Wexler's mail fraud convictions were based on allegations that Wexler was involved in three schemes to defraud investors over a period of approximately six years. The first scheme involved a home video operation. Under this scheme, Wexler and Seneci enticed victims into investing in video rental businesses for a set fee ranging from $4450 to $9000. In exchange for their investment, Wexler and Seneci promised to provide each investor with 50 to 125 video tapes and with two to five retail locations where the investor could rent their video tapes. The defendants also promised investors $25,000 in credit to finance expansions of their businesses.
 
 
 3
 The second scheme involved enticing victims to invest in indoor batting cages. As part of their sales pitch, the defendants informed potential investors that they had opened batting cage facilities across the country. For example, one of the victims who had invested in a facility testified that Wexler had told him that the defendants had helped create the Whitey Ford Grand Slam, a legitimate indoor batting cage franchise. The essence of the defendants' offer was that they and the victim would be full partners, and that the defendants and the victim would each contribute $100,000 to the venture. Furthermore, as partners, the defendants and the victim would share equally in all expenses and profits generated by the business.
 
 
 4
 The final scheme alleged in the indictment involved indoor golf simulators. In order to attract investors, the defendants touted themselves as being experienced in the indoor golf industry. In return for $25,000, the defendants offered investors an exclusive territory where the investor could open an indoor golf facility. The defendants also promised to arrange financing to allow investors to expand their indoor golf operations. The defendants falsely represented, at various times, that they were the exclusive distributor for the Golfotron, Golfomat, or Par-T-Golf indoor golf simulator machines. One victim paid the defendants $119,500 for three indoor golf machines. However, the machines promised by the defendants were never delivered. Another victim paid the defendants $155,000 for three machines and for the promised financing. This victim also did not receive the machines or the promised financing.
 
 
 5
 The tax fraud charges alleged in the indictment related to Wexler's filing of false personal income tax returns and false income tax returns for Official Coney Island Products ("OCIP"). OCIP was a corporate entity owned and operated by the defendants. In May of 1985, the defendants opened a brokerage account at Bear Stearns in OCIP's name. The account consisted of approximately $500,000 to $750,000 of bearer municipal bonds. From 1985 to 1989, defendants redeemed the bonds and dispersed the proceeds into an OCIP bank account. From the OCIP bank account, the proceeds then were dispersed to at least six other corporate entities owned by the defendants. The defendants then would withdraw the proceeds from these six corporate entities to pay personal expenses. From 1985 through 1987, OCIP's Bear Stearns account was not listed on OCIP tax returns, nor did the defendants list the proceeds they eventually obtained through the series of third party transfers.
 
 
 6
 On August 28, 1992, a nine-count superseding indictment was filed against the defendants. Count One charged the defendants with conspiracy to commit mail fraud from September 1, 1984 to November 1, 1990, and included overt acts related to the home video fraud that allegedly took place from August 1, 1982 to November 1, 1990. Counts Two through Five consisted of the actual mail fraud. Count Six charged a conspiracy to obstruct the Internal Revenue Service ("IRS") from August 1, 1982 to November 1, 1990, and alleged overt acts taking place from October 19, 1987 to April 15, 1991. Counts Seven, Eight, and Nine charged the defendants with, inter alia, aiding in the preparation of a false corporate tax return for the years 1985, 1986, and 1987 respectively. The defendants were convicted on all counts.
 
 
 7
 At sentencing, the district court increased Wexler's base offense level of six by adding: (1) a ten-level enhancement based upon the total amount of loss in the three schemes, $773,775; (2) a two-level enhancement for more than minimal planning and a scheme to defraud more than one victim; (3) a two-level enhancement for violating a judicial decree against the conduct; (4) a four-level enhancement for Wexler's role in the offense; and (5) a two-level enhancement for obstruction of justice. Wexler was sentenced to a 45-month term of imprisonment on the conspiracy charges, a 45-month term of imprisonment on the mail fraud counts, and a seven-month term of imprisonment for the preparation of false returns. These terms were ordered to be served consecutively. Wexler also was ordered to pay a $90,000 fine, restitution in the amount of $773,775, and a $450 mandatory special assessment.
 
 
 8
 Wexler appealed his conviction, claiming that: (1) there was a variance between the single mail fraud conspiracy charged in the indictment and the multiple conspiracies proven; (2) evidence supporting his mail and tax fraud convictions was insufficient as a matter of law; (3) the district court committed various evidentiary errors; and (4) the district court improperly evaluated victim loss under the Sentencing Guidelines. By summary order dated January 6, 1995, we rejected each of Wexler's claims and affirmed the conviction.
 
 
 9
 On July 12, 1995, Wexler moved, pro se, to vacate his conviction under 28 U.S.C. § 2255. The district court denied Wexler's motion and this appeal followed.
 
 
 10
 On appeal, Wexler argues that: (1) his counsel provided ineffective assistance in failing to raise a statute of limitations defense to certain counts of the superseding indictment; (2) the district court failed to make particularized findings as to Wexler's involvement in the tax fraud scheme; and (3) the enhancement of his sentence for more than minimal planning and role in the offense constituted double counting. These arguments are without merit.
 
 
 11
 Wexler's first claim is that his counsel was ineffective because a statute of limitations defense was not properly advanced. We find this claim meritless. When reviewing a habeas corpus claim of ineffective assistance of counsel, we apply the two-pronged test of Strickland v. Washington, 466 U.S. 668, 687 (1984). Under this test, the appellant must show: (1) that his attorney's performance "fell below an objective standard of reasonableness," id. at 688, and (2) that there was a "reasonable probability" that, but for his attorney's error, the outcome of the trial would have been different, id. at 694.
 
 
 12
 Wexler can satisfy neither prong of the Strickland test. His claim that Count One of his indictment is time-barred because the last overt act of home video fraud occurred more than five years before the August 28, 1992 filing of the superseding indictment ignores the fact that Count One alleged one conspiracy including all of the various schemes. Because "[t]he limitations period begins to run after the last overt act in furtherance of the main goals of the conspiracy," United States v. Fletcher, 928 F.2d 495, 498 (2d Cir.), cert. denied, 502 U.S. 815 (1991), and the last overt act alleged in Count One occurred on or about March 1, 1990, there is no statute of limitations violation. Accordingly, there was no reason for Wexler's attorney to pursue a statute of limitations defense as to Count One.
 
 
 13
 Wexler also claims that Counts Six and Seven--two of the four tax counts in the superseding indictment--were time-barred. However, an examination of the overt acts alleged in Counts Six and Seven indicates that Wexler filed personal returns and aided in filing OCIP returns after August 28, 1986--the bar date--without revealing the Bear Stearns account or the proceeds derived from that account. Under such circumstances, the statute of limitations continues to run after the bar date. See Fletcher, 928 F.2d at 500 (holding that a conspiratorial agreement continues, for statute of limitations purposes, until the conspirator receives the anticipated profits). Again, Wexler's counsel had no reason to pursue a statute of limitations defense in this case.
 
 
 14
 We also reject Wexler's claim concerning his sentencing on the tax fraud counts. This claim was raised on direct appeal in the form of a sufficiency of the evidence argument. Because " 'section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal,' " Douglas v. United States, 13 F.3d 43, 46 (2d Cir.1993) (quoting Barton v. United States, 791 F.2d 265, 267 (2d Cir.1986)), Wexler is barred from rearguing this contention. United States v. Studley, 47 F.3d 569 (2d Cir.1995), does not present a supervening change of law that requires us to review his claim, as asserted by Wexler.
 
 
 15
 Finally, we find meritless Wexler's claim that the trial court's sentence enhancement for more than minimal planning in the criminal scheme, under U.S.S.G. § 2F1.1(b)(2), and enhancement for leadership role, under U.S.S.G. § 3B1.1, constituted double counting. Double counting occurs when the defendant's sentence enhancement for role in offense is based "solely upon [the defendant's] extensive planning and preparations in connection with the [criminal activity]." United States v. Greenfield, 44 F.3d 1141, 1146 (2d Cir.1995). In the present case, the record indicates that Wexler did not receive the leadership role enhancement, pursuant to U.S.S.G. § 3B1.1, solely because of his extensive planning and preparations in connection with the offenses. Rather, Wexler received the leadership enhancement because of his role in a criminal scheme consisting of more than five participants. Therefore, Wexler was properly sentenced.
 
 
 16
 We have considered Wexler's remaining contentions, and find them to be without merit.